IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| SNEAKER MATCH, LLC, | ) | |
| | ) | Case No. 21-cv-2003 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Hon. Matthew F. Kennelly |
| JOHN DOES 1-10, | ) | |

## ANSWER TO PLAINTIFF'S AMENDED COMPLAINT ON BEHALF OF DEFENDANT SNEAKERSGAMETEES

COMES NOW Defendant SNEAKERSGAMETEES (hereinafter "SGT"), by and through counsel, and in response to Plaintiff's Amended Complaint states as follows:

### PARTIES

1.      Plaintiff Sneaker Match, LLC ("Sneaker Match") is an Arizona Limited Liability Company.

ANSWER: SGT does not possess information sufficient to admit or deny the allegations contained in this paragraph, and on that basis they are denied.

2.      Upon information and belief, Defendants John Does 1-10 ("Defendants") are residents of Vietnam and China.

ANSWER: SGT does not possess information sufficient to admit or deny the allegations contained in this paragraph as to any other defendant, and on that basis they are denied. As to SGT, its owner and operator is not located in Vietnam or China, but rather in the United States in the State of Georgia.

### JURISDICTION AND VENUE

3.      This Court has original subject matter jurisdiction over the claims in this action pursuant to the provisions of the Lanham Act, 15 U.S.C. § 1051, *et seq.*, the Copyright Act 17 U.S.C. § 501, *et seq.*, 28 U.S.C. § 1338(a)-(b) and 28 U.S.C. § 1331.

1

ANSWER: SGT does not possess information sufficient to admit or deny the allegations contained in this paragraph, and on that basis they are denied.

4.      Personal or substantial justice because Defendants have purposefully availed themselves of this forum state, the cause of action arises from Defendants' activities here, and the Defendants' actions have caused damage to Sneaker Match in the state of Illinois.

ANSWER: Denied.

5.      Specifically, Defendants purposefully and intentionally availed themselves of this forum state by manufacturing, importing, distributing, offering for sale, displaying, advertising, and selling counterfeit goods bearing Sneaker Match's creative works, by manufacturing, importing, distributing, offering for sale, displaying, advertising, and selling counterfeit goods bearing Sneaker Match's trademark, by creating and operating interactive websites that reveal specifically intended interactions with residents of the State of Illinois, and by creating and running social media and Google advertisements selling counterfeit goods specifically to residents of the State of Illinois.

ANSWER: Denied.

6.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391, and this Court may properly exercise personal jurisdiction over Defendants since each of the Defendants directly targets business activities toward consumers in the United States, including Illinois, through at least the fully interactive, e-commerce stores operating under several aliases. Specifically, Defendants have targeted sales to Illinois residents by setting up and operating e-commerce stores that target United States consumers using one or more aliases identified in Schedule A attached hereto ("Seller Aliases"). They offer shipping to the United States, including Illinois, accept payment in U.S. dollars and, on information and belief, have sold products using infringing and counterfeit versions of Sneaker Match's federally registered trademarks, copyrighted designs, or both to residents of Illinois. Each of the Defendants is committing tortious acts in Illinois, is

engaging in interstate commerce, and has wrongfully caused Sneaker Match substantial injury in the State of Illinois.

ANSWER: Denied.

STATEMENT OF FACTS

**Introduction**

7.      This action has been filed by Sneaker Match to combat e-commerce store operators who trade upon Sneaker Match's reputation and goodwill by offering for sale and/or selling unauthorized and unlicensed products, using infringing and counterfeit versions of Sneaker Match's federally registered trademarks and copies of Sneaker Match's federally registered copyright protected Works (the "Counterfeit Products"). Defendants create e-commerce stores operating under one or more Seller Aliases that are advertising, offering for sale and selling Counterfeit Products to unknowing consumers. Ecommerce stores operating under the Seller Aliases share unique identifiers, establishing a logical relationship between them and that Defendants' counterfeiting operation arises out of the same transaction, occurrence, or series of transactions or occurrences. Defendants attempt to avoid and mitigate liability by operating under one or more Seller Aliases to conceal both their identities and the full scope and interworking of their counterfeiting operation. Sneaker Match is forced to file this action to combat Defendants' counterfeiting of the registered trademarks and copyrights, as well as to protect unknowing consumers from purchasing Counterfeit Products over the Internet. Sneaker Match has been and continues to be irreparably damaged through infringement of its valuable trademarks and copyrights as a result of Defendants' actions and seeks injunctive and monetary relief.

ANSWER: Denied.

**Plaintiff's Business**

8.      Sneaker Match began in June of 2014 based on the unique business concept of

3

selling t-shirts customized to coordinate with popular sneakers online via the www.sneakermatchtees.com website.

ANSWER: SGT does not possess information sufficient to admit or deny the allegations contained in this paragraph, and on that basis they are denied.

9.      The Sneaker Match business model has been a wild success. Sneaker Match has sold products including t-shirts, sweatshirts, hats, and recently, face masks, on its website throughout the United States and internationally via its online retail store services.

ANSWER: SGT does not possess information sufficient to admit or deny the allegations contained in this paragraph, and on that basis they are denied.

10.      The Sneaker Match business has grown based on its online presence and reputation. The majority of Sneaker Match's site traffic is a result of organic search traffic as opposed to paid advertising.

ANSWER: SGT does not possess information sufficient to admit or deny the allegations contained in this paragraph, and on that basis they are denied.

11.      Sneaker Match is a global business with online retail services via a state-of-the-art website and marketing and advertising online across social media channels.

ANSWER: SGT does not possess information sufficient to admit or deny the allegations contained in this paragraph, and on that basis they are denied.

**Plaintiff's Registered Trademarks**

12.      Sneaker Match has taken significant steps to protect and register its trademark rights with the United States Patent and Trademark Office ("USPTO") as follows:

| Registration Number | Trademark | Registration Date | Goods/Services |
|---|---|---|---|

| 5,010,674 | SNEAKER MATCH TEES | August 2, 2016 | On-line retail store services featuring apparel, footwear, watches, wallets, hats, messenger bags, backpacks, bandanas, underwear, belts, printed matter, toys, jewelry, sunglasses, and accessories; Retail store services featuring apparel, footwear, watches, wallets, hats, messenger bags, backpacks, bandanas, underwear, belts, printed matter, toys, jewelry, sunglasses, and accessories. |
| --- | --- | --- | --- |

| 5,784,852 | SNEAKER MATCH | June 25, 2019 | On-line retail store services featuring apparel, footwear, watches, wallets, hats, messenger bags, backpacks, bandanas, underwear, belts, printed matter, toys, jewelry, sunglasses, and accessories; Retail store services featuring apparel, footwear, watches, wallets, hats, messenger bags, backpacks, bandanas, underwear, belts, printed matter, toys, jewelry, sunglasses, and accessories; Retail stores featuring apparel, footwear, watches, wallets, hats, messenger bags, backpacks, bandanas, underwear, belts, printed matter, toys, jewelry, sunglasses, and accessories |

ANSWER: SGT does not possess information sufficient to admit or deny the allegations contained in this paragraph, and on that basis they are denied.

13.     Sneaker Match has used the marks above (collectively the "Sneaker Match Marks") continuously and exclusively on online retail store services as well as goods including apparel since at least as early as June 2014.[1]

ANSWER: SGT does not possess information sufficient to admit or deny the allegations contained in this paragraph, and on that basis they are denied.

14.     Examples of how Plaintiff uses the Sneaker Match Marks are depicted below:

---

[1]Sneaker Match is the owner of an application for registration with the USPTO of the Sneaker Match Design Mark (Serial No. 88,814,212), which is pending registration for use in association with "On-line retail store services featuring apparel, t-shirts, hoodies, Hats, and accessories."

*Plaintiff's Website Header:*



*Product Listing Image and example of Hang Tag use:*



*Website Product Listing Description (highlighting added):*



ANSWER: The images inserted in the Amended Complaint by Plaintiff speak for themselves. SGT does not possess information sufficient to admit or deny the allegations contained in this paragraph, and on that basis they are denied.

15.     Sneaker Match has expended significant efforts and sums in developing the Sneaker Match brand, business, and advertising under the Sneaker Match Marks.

ANSWER: SGT does not possess information sufficient to admit or deny the allegations contained in this paragraph, and on that basis they are denied.

16.     As a result of Sneaker Match's consistent, continuous, and exclusive use of the Sneaker Match Marks in commerce, the marks have become well and favorably known across the United States and internationally and Sneaker Match has obtained common law trademark rights in and to the Sneaker Match Marks.

ANSWER: SGT does not possess information sufficient to admit or deny the allegations contained in this paragraph, and on that basis they are denied.

**Plaintiff's Registered Copyrights**

17.     Sneaker Match owns several US Copyright Registrations for its unique designs that it makes available for sale on its website ("Sneaker Match Works"):

a.     Sneaker   Match   owns   US   Copyright   Registration   no.

VA0002200361 for the work titled "Misfit Teddy." A reproduction of that work is depicted below:



b. Sneaker Match owns US Copyright Registration no. VA0002200728for the work titled "Young & Heartless Bear." A reproduction of that work is depicted below:



c. Sneaker Match owns US Copyright Registration no. VA0002222471 for the work titled "Misunderstood Bear." A reproduction of that work is depicted below:



d. Sneaker Match owns US Copyright Registration no. VA0002232119 for the work titled "Misunderstood Bunny." A reproduction of that work is depicted below:



e.     Sneaker   Match   owns   US   Copyright   Registration   no.
VA0002221799 for the work titled "Misunderstood Monkey" A reproduction of
that work is depicted below:



f.     Sneaker   Match   owns   US   Copyright   Registration   no.
VA0002226336 for the work titled "Misunderstood Puppy." A reproduction of that
work is depicted below:



g.     Sneaker   Match   owns   US   Copyright   Registration   no.
VA0002230668 for the work titled "Misunderstood Rhino." A reproduction of that
work is depicted below:



h.    Sneaker Match owns US Copyright Registration no. VA0002221669 for the work titled "Misunderstood Tiger." A reproduction of that work is depicted below:



i.    Sneaker Match owns US Copyright Registration no. VA0002222472 for the work titled "Voodoo Sneaker Bear." A reproduction of that work is depicted below:



j.     Sneaker Match owns US Copyright Registration no. VA0002231696 for the work titled "Heartless Bear." A reproduction of that work is depicted below:



ANSWER: SGT does not possess information sufficient to admit or deny the allegations contained in this paragraph, and on that basis they are denied.

**Defendants' Infringing Businesses**

18.     The success of the Sneaker Match business has resulted in rampant counterfeiting and infringement. Sneaker Match has put forth a concerted effort to combat the counterfeiting activities complained of herein. The Sneaker Match anti-counterfeiting efforts include investigating suspicious e-commerce stores identified via proactive review of online sales and advertising activity. Sneaker Match has identified numerous e-commerce stores including those operating under the Seller Aliases, which were and are offering for sale and/or selling Counterfeit Products to consumers in this Judicial District and throughout the United States. Ecommerce sales, including sales via Defendants' stores, have resulted in a sharp increase in the importation of unauthorized products into the United States. Over 90% of all CBP intellectual property seizures were smaller international mail and express shipments (as opposed to large shipping containers). Over 85% of CBP seizures originated from mainland China and Hong Kong. Counterfeit and pirated product account for billions in economic losses, resulting in tens of thousands of lost jobs for legitimate businesses and broader economic losses, including lost tax revenue. **Exhibit 1**, Excerpts from Fiscal year 2018 U.S. Customs and Border Protection ("CBP") Intellectual Property

Seizure Statistics Report.

> ANSWER: SGT does not possess information sufficient to admit or deny the
> allegations contained in this paragraph, and on that basis they are denied.
> Defendant denies that any of the articles or reports referenced in this paragraph or
> anywhere else in Plaintiff's Amended Complaint are relevant to the claims made in
> this lawsuit.

19.    Ecommerce service providers, like those used by Defendants to support their online retail websites, do not subject sellers to adequate identity verification and confirmation procedures. This allows counterfeiters to "routinely use false or inaccurate names and addresses when registering with these e-commerce platforms." **Exhibit 2**, Daniel C.K. Chow, Alibaba, Amazon, and Counterfeiting in the Age of the Internet, 40 NW. J. INT'L L. & BUS. 157, 186 (2020); see also report on "Combating Trafficking in Counterfeit and Pirated Goods" prepared by the U.S. Department of Homeland Security's Office of Strategy, Policy, and Plans (Jan. 24, 2020), attached as **Exhibit 3**, and finding that on "at least some e-commerce platforms, little identifying information is necessary for a counterfeiter to begin selling" and recommending that "[s]ignificantly enhanced vetting of third-party sellers" is necessary. Counterfeiters hedge against the risk of being caught and having their websites taken down from an e-commerce platform by preemptively establishing multiple virtual store-fronts. **Exhibit 3** at p. 22. Since platforms generally do not require a seller on a third-party marketplace to identify the underlying business entity, counterfeiters can have many different profiles that can appear unrelated even though they are commonly owned and operated. **Exhibit 3** at p. 39. Further, "E-commerce platforms create bureaucratic or technical hurdles in helping brand owners to locate or identify sources of counterfeits and counterfeiters." **Exhibit 2** at pp. 186–187.

> ANSWER: SGT does not possess information sufficient to admit or deny the

allegations contained in this paragraph, and on that basis they are denied.

Defendant denies that any of the articles or reports referenced in this paragraph or anywhere else in Plaintiff's Amended Complaint are relevant to the claims made in this lawsuit.

20.     Defendants John Does 1-10 ("Defendants") are online retailers of clothing goods, including t-shirts, sweatshirts, and masks sold to coordinate with various famous shoes. They have targeted online sales to Illinois residents by setting up and operating ecommerce stores using the Seller Aliases, offer shipping to the United States, including Illinois, accept payment in U.S. dollars and, on information and belief, have sold Counterfeit Products to residents of Illinois.

ANSWER: Denied.

21.     Upon information and belief, Defendants are residents of Vietnam and China who operate under a scheme of common ownership and control to create numerous online retail stores under false names and payment accounts to sell clothing products and offer online retail services under a false indication of origin.

ANSWER: Denied. Defendant SGT is operated by a resident of the State of Georgia.

22.     Upon information and belief, Defendants also own and operate websites, run online advertisements, run social media accounts, and own and operate seller accounts on popular marketplaces such as Esty, eBay, and Amazon.

ANSWER: Denied.

23.     Defendants have created e-commerce stores under a variety of names through popular e-commerce platforms and then advertise products directly to United States residents through social media platforms such as Facebook.

ANSWER: Denied.

24.     Defendants spend significant time, effort, and funds to run targeted advertisements

geared toward United States consumers including Illinois residents on social media including Facebook and Instagram as well as via Google Ads.

ANSWER: Denied.

## Defendants' Willful Trademark Infringement

25.     Plaintiff's investigation of Defendants' online stores revealed that, on the tails of Plaintiff's success, Defendants have co-opted the Sneaker Match Marks. Defendants use the Sneaker Match Marks directly on their website, in product listing descriptions, on product images in marketing, and as keywords in advertising and indexing.

ANSWER: Denied.

26.     Examples of Defendants' use of the Sneaker Match Marks appear below:









ANSWER: The images inserted in the Amended Complaint by Plaintiff speak for themselves. SGT does not possess sufficient information to admit or deny the allegations contained in this paragraph and on that basis they are denied.

27.     Defendants use the Sneaker Match Marks to promote and sell counterfeit goods to customers online.

ANSWER: Denied.

28.     Many Defendants also deceive unknowing consumers by using the Sneaker MatchMarks without authorization within the content, text, and/or meta tags of their e-commerce storesin order to attract various search engines crawling the Internet looking for websites relevant to consumer searches for Sneaker Match Products. Other e-commerce stores operating under the Seller Aliases omit using Sneaker Match Marks in the item title to evade enforcement efforts whileusing strategic item titles and descriptions that will trigger their listings when consumers are searching for Sneaker Match Products.

ANSWER: Denied.

29.     When a United States-based customer purchases one of these clothing items from Defendants, and if the customers are lucky, Defendants send a request to print the stolen images on low-quality clothing products and then ship them to the customer. However, in many cases Defendants send nothing at all.

ANSWER: Denied.

30.     Defendants have often posted wholesale copies of Plaintiff's website product listings and new collections on their own retail websites; often adding Plaintiff's newly released listings within days of each release.

ANSWER: Denied.

31.     Defendants often publish an exact copy of Plaintiff's entire listings including Plaintiff's product descriptions and copy and Plaintiff's product images containing Plaintiff's t-shirt/sneaker match design showing Plaintiff's t-shirt hang tag bearing the Sneaker Match Marks. At times Defendants even fail to remove links from the listings that still route back to Plaintiff's

21

website.

ANSWER: Denied.

32.    Some Defendants slightly alter some of the copy, trademarks, or other aspects of the listing, but the copying and likelihood of confusion is obvious and intentional.

33.    Defendants' minimal changes to marks are nearly identical, used on exactly the same products, sold in the same stream of commerce, advertised to the same customers, and the infringement is intentional.

ANSWER: Denied.

34.    Defendants' use of the exact or substantially similar marks to the Sneaker Match Marks on the same goods and services sold in the same stream of commerce to every-day consumers is highly likely to cause confusion as to the origin of the goods and services among consumers.

ANSWER: Denied.

35.    After investigating these stores further, Sneaker Match found commonalities between the sellers.

ANSWER: SGT does not possess information sufficient to admit or deny the allegations contained in this paragraph, and on that basis they are denied.

36.    The sellers used the same or similar website templates, most had direct copies or edited copies of Sneaker Match's website product photos containing the Sneaker Match Marks, and many sellers also often copied Sneaker Match's red, black, and white trade dress.

ANSWER: SGT does not possess information sufficient to admit or deny the allegations contained in this paragraph, and on that basis they are denied.

37.    Defendants use privacy services such as Cloudflare and BigCommerce to hide their identities and avoid identification in association with the infringing domains.

ANSWER: Denied.

38.     Defendants registered and use several domain names that link to websites which sell and display the infringing products and are identical or confusingly similar to the Sneaker Match Marks ("Cybersquatting Domains").

ANSWER: Denied.

39.     Defendants concurrently employ and benefit from substantially similar advertising and marketing strategies. For ke it very difficult for consumers to distinguish such stores from the genuine Sneaker Match store. Sneaker Match has not licensed or authorized Defendants to use the Sneaker Match Marks, and none of the Defendants are authorized retailers of genuine Sneaker Match Products.

ANSWER: SGT does not possess information sufficient to admit or deny the allegations contained in this paragraph, and on that basis they are denied. SGT denies the first sentence of this paragraph.

40.     The Cybersquatting Domains were registered on the below dates, after Plaintiff's Sneaker Match Marks became distinctive of its goods or services: <sneakersmatchtee.com> registered on May 11, 2020; <matchkickstees.com> registered on September 15, 2020; <kicksmatchtee.com> registered on December 7, 2020; and <firematchtees.com> registered on August 5, 2020.

ANSWER: Denied.

**Defendants' Willful Copyright Infringement**

41.     In addition to trading on Plaintiff's Sneaker Match Marks, Defendants also sell shirts bearing exact copies of Plaintiff's copyrighted works.

ANSWER: Denied.

42.     Defendants had access to Plaintiff's works via his online store which is published

and available to anyone with internet access.

    ANSWER: SGT does not possess information sufficient to admit or deny the allegations contained in this paragraph, and on that basis they are denied.

43.    Upon information and belief, Defendants accessed Plaintiff's works directly from its website and copied entire product listings including the descriptions of the products, links within the descriptions and the images containing the works themselves.

    ANSWER: Denied.

44.    When a customer places an order via Defendants' online store, if Defendants decide to fill the order, they print the selected works on low-quality t-shirts, often overseas, and ship the counterfeit products into the United States to the customer.

    ANSWER: Denied.

45.    Examples of Defendants' infringement of Plaintiffs' Works are displayed below:







ANSWER: SGT does not possess information sufficient to admit or deny the allegations contained in this paragraph, and on that basis they are denied.

**Injury to Plaintiff and Consumers**

46.     Defendants' actions described above have damaged and irreparably harmed Sneaker Match.

ANSWER: Denied.

47.     Consumers have already been confused due to Defendant's use of Plaintiff's trademarks and copyrighted designs. Plaintiff has received contacts from confused consumers via its customer service line with complaints regarding orders they intended to place with Sneaker Match but were actually placed via Defendants' websites.

ANSWER: SGT does not possess information sufficient to admit or deny the allegations contained in this paragraph, and on that basis they are denied.

48.     If allowed to continue advertising and providing retail store services and online retail store services under the Sneaker Match Marks, Defendants will further damage and injure Sneaker Match's reputation and the goodwill associated with the Sneaker Match Marks, which are well-known to the relevant consumers as source identifiers for high-quality services.

ANSWER: Denied.

49.     If allowed to continue advertising and offering products and services under the Sneaker Match Marks, Defendants will continue to create significant likelihood of consumer confusion that will irreparably harm the public and its interest in being free from confusion.

ANSWER: Denied.

50.     Sneaker Match has no adequate remedy at law.

ANSWER: Denied.

51.     Defendants knew or should have known that its activities described above constitute trademark infringement, trade dress infringement, copyright infringement, and unfair competition.

ANSWER: Denied.

52.     Defendants acted knowingly and willfully in reckless disregard for Sneaker Match's rights.

ANSWER: Denied.

53.     Defendants intentionally monitored Plaintiff's website for new product listings and directly copied and pasted Plaintiff's listings onto their own websites.

ANSWER: Denied.


**FIRST CLAIM FOR RELIEF**
**Trademark Counterfeiting and Infringement**
**Under § 32(1) of the Lanham Act, 15 U.S.C. § 1114(1)**

54.     Sneaker Match restates all prior paragraphs as if fully restated herein.

ANSWER: SGT adopts and incorporates its responses to paragraphs 1-53 as if fully set forth herein.

55.     Defendants have used spurious designations that are identical to or substantially indistinguishable from the Sneaker Match Marks on goods covered by registrations for the Sneaker Match Marks.

ANSWER: Denied.

56.     Defendants' actions as described above are likely to cause confusion mistake or deception as to the origin, sponsorship, or approval of Defendants' products and commercial activities, and therefore constitute trademark infringement, false designation of origin, counterfeiting, and unfair competition in violation of § 32(1) of the Lanham Act, 15 U.S.C. § 1114(1).

ANSWER: Denied.

57.     Defendants' actions described above have, at all times relevant to this action, been willful.

ANSWER: Denied.

58.     As a foreseeable, direct, and proximate cause of Defendants' above-described actions, Sneaker match and consumers have been and will continue being irreparably damaged.

ANSWER: Denied.

59.     Sneaker Match has no adequate remedy at law.

ANSWER: Denied.

**SECOND CLAIM FOR RELIEF**
**Trademark Infringement**
**Under § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(A)**

60.     Sneaker Match restates all prior paragraphs as if fully restated herein.

ANSWER: SGT adopts and incorporates its responses to paragraphs 1-59 as if fully set forth herein.

61.     Defendants' actions as described above are likely to cause confusion, mistake, or deception as to the origin, sponsorship, or approval of Defendants' products and commercial activities, and therefore constitute trademark infringement, false designation of origin, and unfair competition in violation of § 43(a)(1)(A) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(A).

ANSWER: Denied.

62.     Defendants' actions described above have, at all times relevant to this action, been willful.

ANSWER: Denied.

63.     As a foreseeable, direct, and proximate cause of Defendants' above-described actions, Sneaker Match and consumers have been and will continue being irreparably damaged.

ANSWER: Denied.

64.     Sneaker Match has no adequate remedy at law.

ANSWER: Denied.

**THIRD CLAIM FOR RELIEF**
**Anticybersquatting Consumer Protection Act (ACPA)**
**Under 15 U.S.C.S. § 1125(d)**

65.     Sneaker Match restates all prior paragraphs as if fully restated herein.

ANSWER: SGT adopts and incorporates its responses to paragraphs 1-64 as if fully set forth herein.

66.     Defendants' willfully copied Plaintiff's business, website, and intellectual property with the intent to steal website traffic from Plaintiff's website to their own websites selling inferior products by deceiving consumers.

ANSWER: Denied.

67.     Defendants filed the Cybersquatting Domains well after Plaintiff obtained its SNEAKER MATCH TEES and SNEAKER MATCH trademark registrations and Sneakermatchtees.com domain name.

ANSWER: Denied.

68.     The Cybersquatting Domains are confusingly similar to Plaintiff's registered trademark.

ANSWER: Denied.

69.     Defendants had a bad faith intent to profit from the Cybersquatting Domains.

ANSWER: Denied.

70.     Defendants' actions described above have, at all times relevant to this action, been willful.

ANSWER: Denied.

71.     As a foreseeable, direct, and proximate cause of Defendants' above-described actions, Sneaker Match and consumers have been and will continue being irreparably damaged.

ANSWER: Denied.

31

72.     Sneaker Match has no adequate remedy at law.

        ANSWER: Denied.

## FOURTH CLAIM FOR RELIEF
### Copyright Infringement
### Under 17 U.S.C. §§ 106 AND 501

73.     Sneaker Match incorporates all foregoing paragraphs as if fully restated herein.

        ANSWER: Defendant SGT adopts and incorporates its responses to paragraphs 1-72 as if fully set forth herein.

74.     Sneaker Match also owns a copyright registration for the following works:

        a.      Misfit Teddy, US Copyright Registration no. VA0002200361;

        b.      Young & Heartless Bear, US Copyright Registration no. VA0002200728;

        c.      Misunderstood Bear, US Copyright Registration no. VA0002222471;

        d.      Misunderstood Bunny, US Copyright Registration no. VA0002232119

        e.      Misunderstood Monkey, US Copyright Registration no. VA0002221799

        f.      Misunderstood Puppy, US Copyright Registration no. VA0002226336

        g.      Misunderstood Rhino, US Copyright Registration no. VA0002230668

        h.      Misunderstood Tiger, US Copyright Registration no. VA0002221669

        i.      Voodoo Sneaker Bear, US Copyright Registration no. VA0002222472

        j.      Heartless Bear, US Copyright Registration no. VA0002231696

                ANSWER: Defendant SGT does not possess sufficient information to admit or deny the allegations contained in this paragraph, and on that basis they are denied.

75.     Sneaker Match's Works are widely disseminated via its own website and social media accounts, and on physical products.

        ANSWER: Defendant SGT does not possess sufficient information to admit or deny the

        allegations contained in this paragraph, and on that basis they are denied.

32

76.     Defendants had access to Sneaker Match's Works.

        ANSWER: Defendant SGT does not possess sufficient information to admit or deny the allegations contained in this paragraph, and on that basis they are denied.

77.     Defendants downloaded Sneaker Match's Works from the Sneaker Match website for use in their infringement scheme.

        ANSWER: Denied.

78.     Defendants have reproduced, prepared derivative works of, distributed copies of, imported into the US, and displayed publicly works that are identical copies of, and substantially similar to, Sneaker Match's Works.

ANSWER: Denied.

79.     As a result of Defendants' infringement, Sneaker Match has suffered monetary damages.

        ANSWER: Denied.

80.     Sneaker Match is entitled to the recovery of, at its election, statutory damages, actual damages, Defendants' profits, and the costs of this action.

        ANSWER: Denied.

81.     Sneaker Match is also entitled to preliminary and permanent injunctive relief pursuant to 17 U.S.C. § 502 and 17 U.S.C § 106.

        ANSWER: Denied.

82.     And Sneaker Match is also entitled its attorneys' fees pursuant to 17 U.S.C. § 505 and 17 U.S.C § 106.

        ANSWER: Denied.

## PRAYER FOR RELIEF

Sneaker Match respectfully requests that the Court enter the following judgment against

Defendants:

1. That the Court preliminarily and permanently enjoin and restrain Defendants, as well as their

   heirs, successors, assigns, officers, agents, and employees from:

   a. Reproducing, preparing derivative works of, distributing copies of, and displaying

      publicly Plaintiff Sneaker Match's Works;

   b. Manufacturing, importing, advertising, promoting, offering to sell, selling, distributing,

      or transferring any products bearing Plaintiff Sneaker Match's trademarks or any

      confusingly similar trademark; and

   c. Aiding or assisting any other third party in subsections (a) and (b) above;

2. That the Court award Sneaker Match, at his election, his actual damages, lost profits,

   consequential damages, exemplary damages, statutory damages, and any other damages

   allowable under law;

3. That the Court award Sneaker Match costs and attorneys' fees, and;
4. That the Court award Sneaker Match any other relief to which he is entitled.

ANSWER: Defendant SGT denies that Plaintiff is entitled to any of the relief sought in its prayer for relief.

Defendant respectfully requests that the Court enter judgement in its favor and against Plaintiff, denying Plaintiff

all relief sought herein, and award Defendant SGT their attorney's fees as prevailing parties under the Copyright

Act, or under the Lanham Act if the Court determines this is an exceptional case. Defendant SGT notes that both

counsel of record for Plaintiff are admitted to practice in the Northern District of Illinois, though not in the State of

Illinois. They do not appear to have an office in the district[1], nor have they, as of the date of this filing, retained

local counsel as required by Local Rule 83.15.

---

[1] The website for Plaintiff's counsel lists three offices in Michigan, but none in the Northern District, nor anywhere else in the State of Illinois. https://revisionlegal.com/internet-law/internet-lawyer/chicago-internet-lawyer/

August 10, 2021

Respectfully submitted,

/s/ Erin K. Russell
Erin K. Russell, Esq.
Attorney for SneakerGameTees
The Russell Firm, LLC
833 W. Chicago Avenue, Suite 508
Chicago, IL 60642
T: 312-994-2424
erin@russellfirmip.com

CERTIFICATE OF SERVICE

This is to certify that on August 10, 2021, this document was filed with the Court via the CM/ECF electronic filing system, thereby serving it upon all counsel of record.

/s/ Erin K. Russell